John P. Leschak, Esquire
N.J. Bar No. 03113 – 2010; Civil ID No. JL8921
**LESCHAK & ASSOCIATES, LLC**
Mailing Address:
3587 Highway 9 N, Suite # 217
Freehold, NJ 07728
P (732) 333-0806
F (732) 333-0900
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Diane Grieco and Michael Grieco, *on behalf of themselves*, Plaintiffs, v. Shishka Capital, L.L.C.; Shishka Transportation, L.L.C. d/b/a CAT Limousine & Trolley Co.; Andrij Rudko, in his individual capacity; and Brian Esposito, in his individual capacity, Defendants. | Case No. Judge: CIVIL ACTION NO. **COMPLAINT AND DEMAND FOR JURY TRIAL** **DOCUMENT FILED ELECTRONICALLY** |

## INTRODUCTORY STATEMENT

1.) Plaintiff Diane Grieco ("Plaintiff # 1") brings her complaint, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 *et seq.*, as well as supplementally under 28 U.S.C. § 1367(a), pursuant to the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1 *et seq.*, and the New Jersey State Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a – 56a30 *et seq.*, against her employer Shishka Transportation, LLC d/b/a CAT Limousine & Trolley Co. (the "Company") and its joint owners, Andrij Rudko and Brian Esposito, in their individual capacities ("Individual Defendants"), as well as against Shishka Capital, L.L.C. (the "Parent Company"). Plaintiff Michael Grieco ("Plaintiff # 2") brings his complaint supplementally under 28 U.S.C. § 1367(a), pursuant to New Jersey state and common law for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing. Hereinafter, Plaintiffs shall refer to the Parent Company, the Company and the Individual Defendants collectively as the "Defendants."

1

The Plaintiffs are current or former employees of the Defendants and all work or worked for the Defendants as Limousine Drivers at Defendant's place of business and/or office in Freehold, New Jersey. Plaintiff # 2 was and is also the Director of Operations at the Defendants' Freehold, NJ office.

2.) Plaintiff # 1 brings this Complaint against Defendants alleging that Defendants (1) breached the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 *et seq.*, by failing to pay her the minimum wage as defined by 29 U.S.C. § 206; (2) violated the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq.*, and/or the New Jersey State Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a – 56a30 *et seq.*, by failing to pay her the state-mandated minimum wage; (3) breached their oral employment contract with her by failing to pay compensation due to her under the terms of that contract; and (4) breached the duty of good faith and fair dealing inherent in every contract.

3.) Plaintiff # 2 brings this complaint against Defendants alleging that Defendants (1) breached their written contract with him by failing to pay compensation due to him under the terms of that written agreement; and (2) breached the duty of good faith and fair dealing inherent in every contract.

4.) As will be set forth in full below, Defendants have failed to pay the Plaintiffs for their labor from March 9, 2014 to on or about August 31, 2014, and from on or about September 29, 2014 to the present, with the exception of the nine checks described in paragraph 66 below.

5.) Plaintiff # 1's position at the Company is not exempt from coverage under the FLSA or the NJWHL. For these reasons, discussed in more depth herein, Defendants have violated and continue to violate the FLSA, NJWHL and/or NJWPL, by under-compensating and/or failing to compensate Plaintiff # 1 for work performed by her.

6.) Plaintiff # 2's position at the Company is exempt from coverage under both the FLSA and/or NJWHL.

## JURISDICTION AND VENUE

7.) Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this matter as it arises under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

8.) This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to hear this

Complaint and to adjudicate these claims because this action is brought under the FLSA.

9.) This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear Plaintiff # 1's state law claims brought under the NJWPL, N.J. Stat. Ann. § 34:11-4.1 *et seq.*, and NJWHL, N.J.S.A. § 34:11-56a *et seq.*

10.) This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to hear Plaintiff # 2's state law claims brought under New Jersey state and common law for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing, because the

11.) Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391 because Defendants operate in this district, Plaintiffs have worked in this district for Defendants, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### Plaintiffs

12.) Plaintiff # 1, Diane Grieco, is an adult resident of New Jersey, currently residing at 33 Powell Court, Hightstown, NJ 08520. She is currently or was previously employed by Defendants as a limousine driver at Defendants' Freehold, NJ office during the relevant time period. She and Plaintiff Mr. Michael Grieco are husband and wife and both reside together.

13.) Plaintiff # 2, Michael Grieco, is an adult resident of New Jersey, currently residing at 33 Powell Court, Hightstown, NJ 08520. He is currently or was previously employed by Defendants as Director of Operations / limousine driver at Defendants' Freehold, NJ office during the relevant time period. He and Plaintiff Mrs. Diane Grieco are husband and wife and both reside together.

### Defendants

14.) The Defendant Shishka Capital, L.L.C. (hereinafter the "Parent Company") is a corporation incorporated in the State of New Jersey with its principle place of business located at 1131 Campus Drive West, Morganville, New Jersey 07751.

15.) The Defendant Shishka Transportation, LLC d/b/a CAT Limousine & Trolley Co. (the "Company") is a corporation organized under the laws of New Jersey. The mailing address

of the Company is P.O. Box 54, Colts Neck NJ 07722-0054. The address for the Company's Freehold office is 638 Route 9 South, Freehold, NJ 07728.

16.) The Defendant Shishka Transportation, LLC d/b/a CAT Limousine & Trolley Co. was created on October 19, 2013, via an Operating Agreement entered into between Defendant Shishka Capital, L.L.C. (the "Parent Company") and Plaintiff # 2, Michael Grieco.

17.) Upon information and belief, the Company's gross annual sales made or business done has been in excess of $375,000 at all relevant times.

18.) The Company is engaged in the business of providing transportation service throughout the State of New Jersey, as well as in the surrounding metropolitan area, including New York, Pennsylvania, Maryland, Delaware, Connecticut, and D.C., from its office in Freehold, New Jersey.

19.) At all relevant times, the Company is, and has been, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d). The Company is also an "employer" under the NJWPL, N.J. Stat. Ann. § 34:11-4.1 *et seq.*, and NJWHL, N.J.S.A. § 34:11-56a *et seq.*

20.) The Company operates in interstate commerce by, among other things, sending or dispatching its employees and equipment to and for customers in multiple states, including Pennsylvania, New York, Maryland, Delaware, Connecticut, and D.C.

21.) The Defendant Andrij Rudko (hereinafter referred to as "Mr. Rudko") is one of two joint owners of Shishka Transportation, LLC d/b/a CAT Limousine & Trolley Co. ("the Company").

22.) Mr. Rudko is an adult resident of New Jersey, residing at 20 Crine Rd., Colts Neck, NJ 07722.

23.) The Defendant Brian Esposito (hereinafter referred to as "Mr. Esposito") is one of two joint owners of the Company.

24.) Mr. Esposito is an adult resident of New Jersey, residing at 707 10th Ave., Belmar NJ 07719, and also having an alternate residence in Franklin, Tennessee.

25.) At all relevant times, Mr. Rudko and Mr. Esposito (hereinafter referred to as the "Individual Defendants") are, and have been, officers of the Company, and/or agents of the Company having management and/or control of the Company.

26.) At all relevant times, the Individual Defendants are, and have been, "employers" within the meaning of the FLSA, pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 203(d), and Boucher vs. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009), and therefore each Individual Defendant is individually liable for any and all FLSA violations by the Company.

27.) At all relevant times, the Individual Defendants are, and have been, "employers" within the meaning of NJWPL, pursuant to N.J.S.A. § 34:11-4.1(a) and 4.2, and within the meaning of the NJWHL, pursuant to N.J.S.A. § 34:11-56a1(g), and therefore, each Individual Defendant is individually liable for any and all unpaid pay and/or any wages due to meet the minimum wage level under the NJWPL and/or NJWHL, pursuant to Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 759 A.2d 887 (1999).

## STATEMENT OF FACTS

28.) Defendants employ or have employed the Plaintiffs to assist them in providing transportation services to customers throughout the State of New Jersey, as well as the surrounding metropolitan area, including New York and Pennsylvania.

29.) Plaintiffs are all broadly classified by Defendants as follows: Mr. Grieco as Director of Operations / limousine driver / chauffeur; and Mrs. Grieco as limousine driver / chauffeur / detailer. Plaintiffs are not represented by any labor organization and therefore are considered "non-represented" employees.

30.) Plaintiffs began their employment with the Defendants on October 19, 2013.

31.) On October 19, 2013, the Defendant Shishka Transportation, LLC d/b/a CAT Limousine & Trolley Co. (the "Company") was created via an Operating Agreement entered into between Defendant Shishka Capital, L.L.C. (the "Parent Company") and Plaintiff # 2, Michael Grieco.

32.) Pursuant to the Operating Agreement, Shishka Capital, L.L.C. acquired fifty-one ("51") percent ownership of the Company, and Plaintiff # 2, Michael Grieco, acquired forty-nine ("49") percent ownership of the Company, and both parties were made Members of the Company.

33.) At the time of the Agreement on October 19, 2013, Shishka Capital, L.L.C., the

two Individual Defendants, Mr. Rudko and Mr. Esposito, were the sole members or principals of the Parent Company.

34.) As of the filing of this complaint, to the best of Plaintiffs' belief and knowledge, the two Individual Defendants, Mr. Rudko and Mr. Esposito, are still the only members or principals of the Parent Company.

35.) Upon information and belief, Shishka Capital, L.L.C., via its two principals, Mr. Rudko and Mr. Esposito, have actively participated in, and exercised control over, the operations of the Company itself.

36.) Section 2.03 of the Operating Agreement, appearing on Pages 5 and 6 of the aforementioned Agreement, provided the following: "Payment shall be made by the Company to Members for services rendered involving the Members and the Company as may be executed from time to time. The Members agree that in consideration for his performance of services as General Manager of the Company, Grieco shall be paid an initial salary of Fifty-Two Thousand Dollars ($52,000) per annum (the "Grieco Salary"). The Grieco Salary shall be paid in accordance with the normal payroll practices of the Company."

37.) The normal payroll practice of the Company as of October 19, 2013 was to pay payroll to employees weekly using the payroll services of Wells Fargo Business Payroll Services.

38.) On or about December 1, 2013, a subsequent written agreement was entered into between Michael Grieco and the Parent Company, whereby the Parent Company became the sole member of the Company. However, this subsequent written agreement did not change any of the provisions in Section 2.03 of the Operating Agreement regarding payment of Michael Grieco's annual salary.

39.) From on or about December 1, 2013 until the Present, the Parent Company has been the sole member of the Company; Michael Grieco has not been a Member of the Company during that time.

40.) Eric Melzer, the former attorney for the Parent Company, was supposed to give Michael Grieco a copy of the December 1, 2013 agreement. However, he never provided a copy to Mr. Grieco.

41.) As shown by the Operating Agreement, Defendants and Plaintiff Michael Grieco

(hereinafter "Mr. Grieco") entered into a written agreement on October 19, 2013, wherein Defendants promised to pay Mr. Grieco $52,000.00 annual salary.

42.) On or about December 1, 2013, the Parent Company and Michael Grieco entered into a subsequent written agreement, whereby the Parent Company agreed that the Company would continue to pay Mr. Grieco $52,000.00.

43.) Upon information and belief, the written agreement of on or about December 1, 2013 (hereinafter "the December 1, 2013 agreement") also promised that the Company would pay Mr. Grieco normal chauffeur compensation for all chauffeur work performed, in addition to his annual salary.

44.) Michael Grieco was never provided a copy of the December 1, 2013 agreement.

45.) Defendants and Plaintiff Diane Grieco (hereinafter "Mrs. Grieco") entered into an oral employment contract on or about October 19, 2013, wherein Defendants promised to pay Mrs. Diane Grieco normal chauffeur compensation, as defined by the individual trips and services performed, plus any detailing work completed as additional compensation.

46.) Upon information and belief, at the time Defendants made the above mentioned representations to Plaintiffs, they intended that Plaintiffs would rely on their representations in accepting employment with Defendants.

47.) Plaintiffs did in fact rely on the above representations and were induced to accept employment with Defendants.

48.) As a result of Plaintiffs' reliance on Defendants' representation, Plaintiffs have suffered damages.

49.) Upon information and belief, throughout the time of Plaintiffs' employment, Defendants operated the Company to benefit themselves individually without any regard to the interests of those to whom the corporation was obligated, namely the Plaintiffs.

50.) By engaging in the above-referenced conduct, Defendants have misused the corporate form for their own personal benefit.

51.) As a result of Defendants' misuse of the corporate form, Plaintiffs should be permitted to pierce the corporate veil and hold the Defendants individually liable in the interests of justice.

52.) On March 9, 2014, Defendants stopped paying Plaintiffs.

53.) The Company's payroll account with Wells Fargo Business Payroll Services was closed sometime in or around spring 2014, after March 9, 2014, due to inactivity.

54.) From on or about October 19, 2013 to March 8, 2014, Defendants had been paying both Plaintiffs via weekly paychecks.

55.) From on or about October 19, 2013 to March 8, 2014, Plaintiff Michael Grieco was paid $1,000.00 weekly, plus any chauffeur compensation for any chauffeur work performed for that pay week, pursuant to Section 2.03 of the Operating Agreement (appearing on Pages 5 and 6 of the Agreement).

56.) From March 9, 2014 until the present, both Plaintiffs have continued to work as normal, despite not being paid by Defendants from March 9, 2014 to on or about August 31, 2014, and from on or about September 29, 2014 to the present, with the exception of the nine checks described in paragraph 66 below.

57.) The compensation owed to Plaintiff # 1, Diane Grieco, would change each week, depending on the number of trips covered by her in that particular week.

58.) In the fall of 2014, in or around September 2014, Plaintiffs had a meeting with Mr. Rudko at the Freehold, NJ office, to discuss the payroll problem.

59.) At the fall 2014 meeting between Mr. Rudko and Plaintiffs, the Plaintiffs insisted that the Company had to re-open its payroll account with Wells Fargo Business Payroll Services to pay the employees of the Company, including Plaintiffs.

60.) After this fall 2014 meeting, the Company's payroll account with Wells Fargo was reopened and funded by the Company, and Plaintiffs were paid by the Company via weekly checks on or about Sept. 7, Sept. 14, Sept. 21, and Sept. 28., 2014.

61.) From Oct. 5 – Dec. 7, 2014, checks were printed with payroll tax liabilities paid, but there was no money in the payroll account for the Plaintiffs to actually cash their checks.

62.) Upon information and belief, during this time, from October 5 to December 7, 2014, there were two other employees of the Company.

63.) From October 5 to December 7, 2014, the checks of the two other employees were able to be cashed, but the checks for the Plaintiffs were unable to be cashed.

64.) Sometime around the middle of December 2014, the Company's operating account was compromised, so Wells Fargo closed all business accounts for the Company.

8

65.) After this incident in the middle of December 2014, after the accounts were closed, the Company only re-opened the operating account; the payroll account was not reopened due to lack of funding.

66.) In or around early 2015, of the twenty non-cashable checks that were issued to Plaintiffs between Oct. 5 – Dec. 7, 2014, nine were replaced with cashable checks from the Company's operating account, and those nine checks were turned into the Company book-keeper by Michael Grieco for accounting purposes.

67.) Plaintiffs still had eleven non-cashable checks that were issued to them from the period of Oct. 5 to Dec. 7, 2014.

68.) Plaintiffs were never compensated for the eleven dishonored checks from the closed payroll account.

69.) Ronn Roksny, one of the two employees of the Company previously mentioned, left the Company in or around May 2015 for lack of compensation owed to him.

70.) Sometime in the summer of 2015, Mr. Roksny received a check directly from Mr. Rudko to settle any potential wage claims that Mr. Roksny had against Defendants.

71.) On two different occasions in the fall 2015, Mr. Roksny also received two more checks, but these checks were out of the Company's operating account.

72.) From on or about March 9, 2014 until the present, Defendant Mr. Rudko made approximately fifty promises to Plaintiffs that he was working on a financial package that would put a large cash infusion into the company, and that as a result of this that Plaintiffs would be made whole, i.e. that Plaintiffs would then receive their back-pay.

73.) In August 2015, Mr. Rudko met with Plaintiffs at the law office of Mr. Blake Lawrence in Freehold, NJ, at which time Plaintiffs expressed serious concerns in regards to their continued nonpayment.

74.) At this August 2015 meeting, Mr. Rudko and Mr. Lawrence both stated that payroll should be a priority for the Company.

75.) No payroll service was in effect at the Company at the time of the August 2015 meeting.

76.) No payroll service was initiated for the Company until February 1, 2016.

77.) Although a new payroll services account was opened for the Company on or

around February 1, 2016, Plaintiffs still have not been paid since that date.

78.) Despite Defendants' continued failure to pay Plaintiffs, the Plaintiffs continued to work for Defendants because they relied to their detriment upon the continued misrepresentations of the Defendants.

79.) From March 9, 2014 through the present, as a result of the continued non-payment of wages and in order to cover their living expenses, Plaintiffs were forced to sell their personal property, including personal jewelry.

80.) In or about September 2014, Plaintiffs were forced to move into their daughter's home at 33 Powell Court, Hightstown, NJ 08520, and they have lived there ever since, since they are unable to afford their own place due to the Defendants' continued nonpayment of wages.

81.) Shishka Capital, L.L.C., Mr. Rudko and Mr. Esposito, have actively participated in, and exercised control over, the operations of the Company.

82.) There is such a unity of interest between the Parent Company, the Company and the Individual Defendants, that separate personalities do not exist.

83.) Shishka Capital, L.L.C., Mr. Rudko and Mr. Esposito have failed to observe corporate formalities in relation to the Company, Shishka Transportation, L.L.C. d/b/a CAT Limousine & Trolley Co.

84.) Upon information and belief, Mr. Rudko has siphoned funds from the Company.

85.) Upon information and belief, Shishka Capital, L.L.C. is merely a façade for the operations of Mr. Rudko and Mr. Esposito in relation to the Company.

## CAUSES OF ACTION

### COUNT ONE

(Violation(s) of the F.L.S.A.)

86.) Plaintiff # 1, Diane Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

87.) Plaintiff # 1, Diane Grieco, cannot be considered an exempt employee because her position, as defined by her job duties, rather than her title or the Company's own classification system, do not fall within the FLSA enumerated exemptions.

88.) Nevertheless, despite Plaintiff # 1, Diane Grieco's status as a non-exempt

employee, the Defendants have failed from March 9, 2014 to on or about August 31, 2014, and from on or about September 29, 2014 to the present, with the exception of the nine checks described in paragraph 66 above, and continue to fail, to pay Plaintiff # 1, Diane Grieco the required hourly minimum wage.

89.) By failing to pay the Plaintiff # 1 Diane Grieco such minimum wage, the Defendants have willfully violated and continue to willfully violate the FLSA, 29 U.S.C. § 201, *et seq*.

90.) As a result of Defendants' willful violations of the FLSA, the Plaintiff # 1, Diane Grieco is entitled to compensatory and liquidated damages equal to no less than double the amount of her unpaid and/or underpaid minimum wages.

91.) Further, the Defendants have failed to properly notify and advise employees of their rights under the FLSA and/or misrepresented the employees' rights under the FLSA and otherwise engaged in conduct that tolls the statutes of limitations for recovery of unpaid wages and damages under the FLSA.

## COUNT TWO
(Violation(s) of the New Jersey Wage Payment Law)

92.) Plaintiff # 1, Diane Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

93.) The New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1 *et seq.*, requires an employer to pay the full amount of monies due an employee for services rendered, including minimum wage and overtime.

94.) Under the New Jersey Wage Payment Law, as the two individual owners of the Company, the Individual Defendants are individually liable to Plaintiff # 1, Diane Grieco, for the compensation payments due to her.

95.) By engaging in the above-referenced conduct, Defendants violated the New Jersey Wage Payment Law, thereby causing Plaintiff # 1 substantial damages.

## COUNT THREE
(Violation(s) of the New Jersey Wage and Hour Law)

11

96.) Plaintiff # 1, Diane Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

97.) The New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a – 56a30 *et seq.*, requires an employer to pay the full amount of monies due an employee for services rendered, including minimum wage and overtime.

98.) Under the New Jersey Wage and Hour Law, as the two individual owners of the Company, the Individual Defendants are individually liable to Plaintiff # 1, Diane Grieco, for the compensation payments due to her.

99.) By engaging in the above-referenced conduct, Defendants violated the New Jersey Wage and Hour Law, thereby causing Plaintiff # 1 substantial damages.

## COUNT FOUR

(Breach of Oral Contract)

100.) Plaintiff # 1, Diane Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

101.) By engaging in the above-referenced conduct, Defendants breached their oral contract with Plaintiff # 1, Diane Grieco.

102.) Defendants breached their oral agreement with Plaintiff # 1, Diane Grieco, requiring them to pay her normal chauffeur compensation, as defined by the individual trips and services performed, plus any detailing work completed as additional compensation.

103.) As a result of Defendants' breach(es) of contract, Plaintiff # 1, Diane Grieco, has lost substantial income and/or has suffered substantial damages.

## COUNT FIVE

(Breach of the Duty of Good Faith and Fair Dealing)

104.) Plaintiff # 1, Diane Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

105.) By engaging in the above-referenced conduct, Defendants breached the duty of good faith and fair dealing inherent in every contract, depriving Plaintiff # 1, Diane Grieco, of substantial compensation due her.

106.) As a result of Defendants' violation of the duty of good faith and fair dealing, Plaintiff # 1 has lost substantial income, and/or has suffered substantial damages.

## COUNT SIX

(Breach of Written Contract)

107.) Plaintiff # 2, Michael Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

108.) By engaging in the above-referenced conduct, Defendants breached their written contract with Plaintiff # 2, Michael Grieco.

109.) Defendants breached Section 2.03 of the Operating Agreement, requiring them to pay Plaintiff # 2, Michael Grieco, an annual salary of Fifty-Two Thousand Dollars ($52,000), in accordance with the normal payroll practices of the Company.

110.) Defendants breached the December 1, 2013 agreement which promised that the Company would pay Mr. Grieco normal chauffeur compensation for all chauffeur work performed, in addition to his annual salary.

111.) As a result of Defendants' breach(s) of contract, Plaintiff # 2, Michael Grieco, has lost substantial income and/or has suffered substantial damages.

## COUNT SEVEN

(Breach of the Duty of Good Faith and Fair Dealing)

112.) Plaintiff # 2, Michael Grieco, repeats and incorporates the preceding paragraphs as if set forth in their entirety.

113.) By engaging in the above-referenced conduct, Defendants breached the duty of good faith and fair dealing inherent in every contract, depriving Plaintiff # 2, Michael Grieco, of substantial compensation due to him.

114.) As a result of Defendants' violation of the duty of good faith and fair dealing, Plaintiff # 2 has lost substantial income, and/or has suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants and in favor of Plaintiffs for the following relief:

a. Assume jurisdiction of this action;

b. Award Plaintiffs all damages to which they are entitled including but not limited to pre-judgment and post-judgment interest, all unpaid wages, and all contributions to the Defendant's Social Security and NJ Unemployment Insurance that would have been made as to the Plaintiffs but for the Defendants' failure to pay proper minimum wages;

c. Order that the corporate veil be pierced and that Defendants be held personally liable for any and all of the Company's obligations to Plaintiffs;

d. Order Defendants to compensate Plaintiffs for the loss of compensation that was due her and him under the terms of their Employment Agreements, including interest accrued thereon;

e. Award Plaintiff # 1, Diane Grieco, liquidated damages for Defendants' willful violation of the FLSA and order that the statute of limitations be extended to three years under the FLSA;

f. Issue an injunction precluding future violations by the Defendants;

g. Award Plaintiffs' counsel reasonable attorneys' fees, paralegal fees, expert witness fees, and all expenses associated with prosecuting this action, to the extent necessary to prosecute Plaintiff # 1's action under the FLSA;

h. Tax the costs of this action against the Defendant; and

i. Grant such other and further relief to which the Plaintiffs may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues as permitted by law.

Respectfully submitted,

LESCHAK & ASSOCIATES, LLC

By: /s/ John P. Leschak

John P. Leschak, Esq.
N.J. Bar No. 03113 – 2010; Civil ID No. JL8921
Attorney for Plaintiffs

Dated: March 8, 2016